IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE TOYOTA DEALERS ASSOCIATION and ANDY MADSEN,<br><br>　　Plaintiffs,<br><br><br><br>vs.<br><br><br><br>ST. PAUL MERCURY INSURANCE COMPANY and FEDERAL INSURANCE COMPANY,<br><br>　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:05-CV-497 TS |

　　This matter came before the Court for hearing on Defendant St. Paul Mercury Insurance Company's[1] Motion for Summary Judgment and Motion to Strike on June 5, 2006. At the outset of the hearing, the Court denied Defendant's Motion to Strike and ruled that Colorado law applied to this case. At the close of the hearing, the Court took Defendant's Motion for Summary Judgment under advisement. For the reasons set out below, the Court will grant the Motion and close this case.

---

　　[1]Defendant Federal Insurance Company was dismissed on January 30, 2006. *See* Docket No. 17. Therefore, the Court will refer to Defendant in the singular.

1

I.  UNDISPUTED FACTS

The following facts are not in dispute.  On October 22, 2002, Marine Credit Systems brought suit against a number of individuals and entities, including the Utah Toyota Dealers Association[2] and Andy Madsen.[3]  An Amended Complaint was filed on March 13, 2003.[4]  That Amended Complaint also named the Utah Toyota Dealers Association and Andy Madsen.[5]  That Amended Complaint contained a number of causes of action, some of which were based in antitrust.[6]  Neither the Salt Lake Toyota Dealers Association ("SLTDA") nor the Denver Region Toyota Dealers Association ("DRTDA") were named as defendants in that lawsuit.  During this period, Madsen was the president of SLTDA and the director of DRTDA.

Defendant St. Paul Mercury issued the "Non-Profit Corporation and Directors, Officers and Corporate Indemnification Policy" ("the Policy") at issue here.[7]  The Policy Period runs from December 31, 2000, through December 12, 2002.[8]  The Policy "insures against **Loss** arising from a **Wrongful Act** alleged in any claim(s) first made and reported to the Insurer during the **Policy**

---

[2]Plaintiffs claim that Utah Toyota Dealers is a non-existent entity.  Plaintiffs argue that the actual corporation is Salt Lake Toyota Dealers.  Plaintiffs do not dispute that Salt Lake Toyota Dealers was not named in the Complaint or Amended Complaint.

[3]Civil No. 2:02-CV-1158, Docket No. 1.

[4]Docket No. 80.

[5]*Id*.  In the Amended Complaint Madsen is identified as the "general manager of Karl Malone Toyota, a director and officer of M & M Automotive, Inc., and the president of UTDA." *Id*. ¶12.

[6]*Id*.

[7]Civil No. 2:05-CV-487, Docket No. 19, Exhibit 1.

[8]*Id*.

**Period** or Discovery Period (if applicable)."[9]  Under the "Definitions" section of the Policy, the term "Corporation" is defined as "the Non-Profit Corporation(s) or Organization(s) listed in Item 1 of the Declaration or amendments thereto."[10]  Item 1 of the Declaration names Denver Region Toyota Dealers Advertising Group, Inc. as the Corporation.[11]  DRTDA is a Colorado corporation, with a New Mexico address.  DRTDA serves Toyota dealers in a number of Western states.

In the Endorsement Deleting Insuring Agreement C and Amending Definition of Insured(s), Insuring Agreement B was amended as follows:

> B.    Directors and Officers Liability
>
> To pay the Loss of the Insured(s) for which they are legally liable in their capacity as Directors or Officers of the Corporation but only to the extent that they have not been indemnified by the Corporation.[12]
>
> Insuring Agreement C, relating to Corporation Liability, was deleted in its entirety.[13]

Further, the definition of the term "Insured(s)" was amended.  Pursuant to that amendment, the term insured(s) "mean[s] any person who was, is or may hereafter be a Director or Officer of the Corporation while acting in their capacity as such."[14]  The definition goes on to state that "there is no coverage under this policy for the Wrongful Acts of the Corporation or its employees,

---

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] *Id*.

[13] *Id*.

[14] *Id*.

volunteers or committee members, or for the Wrongful Acts of the Corporation's subsidiaries or their employees, volunteers or committee members."[15]  "The term **Wrongful Act** means any alleged breach of duty, error, misstatement, misleading statement, or omission by the **Corporation** or by an **Insured(s)** acting solely in their capacity as a Director, Officer, Employee, Volunteer or Committee Member of the **Corporation**."[16]

A further provision, the Anti-Trust Exclusion, states:

> In consideration of the premium charged, it is hereby understood and agreed that the insurer shall not be liable to make any payment for Loss based upon, arising from or attributable to any anti-trust action or proceedings including but not limited to any Shareholder Derivative or Class Action claim or claims arising from or related thereto.[17]

In the Exclusions provision of the Policy, Exclusion K states:

> The Insurer shall not be liable to make any payment for Loss in connection with any claim(s) made against the Corporation or the Insured(s) . . . based upon, arising from or attributable to the acts or omissions of any Insured(s) while acting in any capacity for any corporation, subsidiary or other organization not named in Item 1 of the Declarations.[18]

On September 25, 2003, by way of letter,[19] the suit brought by Marine Credit Systems, Inc., discussed above, was reported to St. Paul Mercury on behalf of SLTDA and Madsen.  This action was reported more than nine months after the expiration of the Policy Period.  Defendant denied Plaintiffs' claim.

---

[15]*Id*.

[16]*Id*.

[17]*Id*.  Hereinafter "Antitrust Exclusion."

[18]*Id*.  Hereinafter "Outside Capacity Exclusion."

[19]*Id*., Exhibit 2.

## II.  MOTION TO STRIKE

In Defendant's Reply Memorandum in Support of its Motion for Summary Judgment, Defendant seeks to strike: (1) the legal arguments interposed by Plaintiffs in response to Facts Nos. 3-12, 14-15, and 18-29, on the grounds that they are irrelevant, nonresponsive, and misleading; and (2) all exhibits appended to Plaintiffs' opposition brief because no evidentiary foundation has been offered by Plaintiffs to support their admission into evidence.  Plaintiffs oppose this Motion, arguing that Defendant has failed to comply with the Federal Rules of Civil Procedure and the Court's local rules of practice.

The Court finds that Defendant's Motion to Strike does not comply with the federal or local rules.  It is merely a single paragraph within its Reply Memorandum.  Defendant has not filed a Motion to Strike, nor has it filed a Memorandum in Support of that Motion as required by DUCivR 7-1.  Therefore, the Motion is procedurally improper.

Even if Defendant's Motion were properly before the Court, there is no justification for the Motion.  Defendant seeks to strike Plaintiffs' responses to Defendant's statement of undisputed fact and seeks to strike all of Plaintiffs' exhibits.  Defendant provides no justification for these actions.  Further, the exhibits attached to Plaintiffs' Memorandum in Opposition are largely the same as those used by Defendant.  For these reasons, the Motion lacks substance and is denied.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[20]  In considering whether

---

[20]Fed. R. Civ. P. 56(c).

genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[21] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[22]

## IV.  CHOICE OF LAW

The Court must first determine whether Colorado or Utah law applies to this case.  Since Utah is the forum state, Utah's choice of law provisions control.[23]  Utah has adopted the most significant relationship approach as set out in the Restatement (Second) Conflict of Laws.[24]  In order to apply the most significant relationship approach, the Court must first characterize the nature of the claim.[25]  This is a contract dispute, therefore, the Court will consider the factors set out in Restatement (Second) Conflict of Laws § 188.

Section 188 sets forth a number of relevant factors for the Court to consider, including: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[26]

---

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[22] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[23] *Waddoups v. The Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

[24] *Id.*

[25] *Id.*

[26] Restatement (Second) Conflict of Laws § 188.

Applying these factors to this case, the Court finds that Colorado law applies. First, Colorado was the place of contracting and negotiation of the contract. It is undisputed that Defendant St. Paul Mercury negotiated with and contracted with DRTDA's Denver-based brokers in Colorado. Moreover, DRTDA is incorporated in Colorado.

Plaintiffs argue that Utah law should apply here. They argue that the location of DRTDA is not as significant as DRTDA's Utah members, since Utah is where the underlying action took place. In support of their position, Plaintiffs rely on *Wisconsin Mortgage Assurance Corp. v. HMC Mortgage Corp.*[27] In *Wisconsin Mortgage*, this Court held that Utah law, rather than California law, should apply.[28] That case is distinguishable from the case before the Court because the insurance application originated in Utah, the reply was ordered to be made to Utah, the underlying mortgage was negotiated in Utah, the mortgage application and supporting documents were executed in Utah, and the mortgage loan was secured by property in Utah.[29]

The Court believes that this case is more closely associated with *American National Fire Insurance v. Farmers Insurance Exchange*.[30] *American National* involved an insurance policy executed and issued in Idaho, but the automobile accident triggering the policy occurred in Utah.[31] The Utah Supreme Court held that Idaho law applied in that case because the policy was negotiated and executed there, it involved an Idaho resident and an automobile that was

---

[27] 712 F.Supp. 878 (D. Utah 1989).

[28] *Id*. at 880.

[29] *Id*.

[30] 927 P.2d 186 (Utah 1996).

[31] *Id*. at 187–88.

registered and garaged in that state.[32]  The court stated that "we must hold that the parties to an automobile insurance contract cannot change their bargain or have the bargain changed for them every time they drive across a state line."[33]

Here, the Policy was negotiated and contracted in Colorado.  While Plaintiffs argue that the most important factor for the Court to consider is the location of the underlying suit, such an approach would result in the outcome that the Utah Supreme Court was trying to avoid in *American National*.  If the choice of law depended on where the underlying suit was brought, the end result would be that the policy changed from state-to-state, depending on where suit was brought.  Under Plaintiffs' theory, the Policy would be interpreted differently in Utah than it would be if the underlying suit were brought in Colorado, New Mexico, Arizona, or any other state within which the DRTDA is associated.  Such a result is absurd.  For these reasons, the Court will apply Colorado law here.

## V.  ANALYSIS

Plaintiff's Complaint contains three causes of action: (1) Breach of Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; and (3) Unjust Enrichment.  The Court finds that Plaintiffs causes of action fail as a matter of law because Plaintiffs failed to file their claim in a timely manner.[34]

---

[32]*Id*. at 188–89.

[33]*Id*. at 191.

[34]While the parties have raised a number of issues, during oral argument the parties focused on this particular argument.  As a result, the Court will focus its attention on this issue as well.

As a general rule, an insurer must show that they are prejudiced by an insured's failure to file a timely notice of claim.[35] This is referred to as the "notice-prejudice rule." Courts, however, including Colorado courts, have recognized the difference between "claims-made policies" and "occurrence policies." "A fundamental distinction between the two types of policies is the peril insured against by each."[36]

> In the 'occurrence' policy, the peril insured [against] is the 'occurrence' itself. Once the 'occurrence' takes place, coverage attaches even though the claim may not be made for some time thereafter. [However, as to a] 'claims-made' policy, it is the *making of the claim* which is the event an peril being insured and, subject to policy language, regardless of when the occurrence took place.[37]

The court went on to state that "the requirement of notice in an 'occurrence' policy is subsidiary to the event that invokes coverage. By contrast, the event that invokes coverage under a 'claims-made' policy is the transmittal of notice of the claim to the insurance carrier."[38] As a result of the differences between 'occurrence' policies and 'claims-made' policies, the court refused to apply the 'notice-prejudice rule' to the 'claims-made' policy at issue there.

This holding is in line with the majority of courts, which have held that the notice-prejudice rule is inapplicable to claims-made policies.[39] Application of the notice-prejudice rule

---

[35] *St. Paul Fire & Marine Ins. Co. v. Estate of Hunt*, 811 P.2d 432, 435 (Colo. Ct. App. 1991).

[36] *Id*. at 434.

[37] *Id*. (quoting Kroll, *The Professional Liability Policy "Claims Made,"* 13 Forum 842, 843 (1978)) (emphasis added).

[38] *Id*.

[39] *See e.g. Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 659 (5th Cir. 1999) ("[A]n insurance company may deny coverage under a 'claims-made' policy without a showing of prejudice."); *Esmailzadeh v. Johnson and Speakman*, 869 F.2d 422, 424 (8th Cir. 1989) (refusing to apply notice-prejudice rule to claims-made policy); *Pension Trust*

would have the effect of extending the coverage,[40] thus depriving parties of what they had bargained for and re-writing the contract.[41] For this reason, the majority of courts have refused to apply the notice-prejudice rule to claims-made policies. The cases cited by Plaintiffs are easily distinguishable. Both cases cited by Plaintiffs involved 'occurrence' polices, not 'claims-made' policies.[42] Plaintiffs ignore the distinction recognized between these types of policies. Based on the above, the Court finds that Defendant need not show prejudice as a result of Plaintiffs' untimely filing of a claim, since the Policy is a claims-made policy. As a result, Plaintiffs failed to file their claim in a timely manner and that claim was properly rejected by Defendant.

---

*Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 956 (9th Cir. 2002) ("In California, the notice-prejudice rule governs occurrence policies but not general claims-made policies."); *Ass'n of County Com'rs of Okla. v. Nat'l Am. Ins. Co.*, 116 P.3d 206, 211 (Okla. Ct. App. 2005) ("[T]he rule that late notice is acceptable where the insurer has not been prejudiced is inapplicable to claims made policies."); *Bianco Professional Ass'n v. Home Ins. Co.*, 740 A.2d 1051, 1057 (N.H. 1999) ("There is no requirement that an insurance company prove it was prejudiced due to lack of notice under a claims made policy."); *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.*, 974 S.W.2d 635, 639 (Mo. Ct. App. 1998) ("Under a 'claims made' policy, there is no coverage for late claims whether or not the insurer was prejudiced."); *Hasbrouck v. St. Paul Fire & Marine Ins. Co.*, 511 N.W.2d 364, 368 (Iowa 1993) (holding prejudice not required with claims-made policy); *Campbell & Co. v. Utica Mut. Ins. Co.*, 820 S.W.2d 284, 288 (Ark. Ct. App. 1991) (holding notice-prejudice rule inapplicable to claims-made policy); *Hirsch v. Texas Lawyers' Ins. Exchange*, 808 S.W.2d 561, 566 (Tex. Ct. App. 1991) ("To require a showing of prejudice for late notice would defeat the purpose of 'claims-made' policies, and in effect, change such a policy into an 'occurrence' policy."); *Charles T. Main, Inc. v. Firemen's Fund Ins. Co.*, 551 N.E.2d 28, 30 (Mass. 1990) (holding that failure to comply with notice and reporting provisions bars coverage, regardless of any prejudice to insurer); *Safeco Title Ins. Co. v. Gannon*, 774 P.2d 30, 35 (Wash. Ct. App. 1989) (refusing to apply prejudice requirement to claims-made policy); *Sletten v. St. Paul Fire & Marine Ins. Co.*, 780 P.3d 428, 430 (Ariz. Ct. App. 1989) (refusing to extend reporting period under claims-made policy); *Gulf Ins. Co. v. Dolan, Fertig & Curtis*, 433 So.2d 512, 515–16 (Fla. 1983) (same).

[40]*Slater v. Lawyers' Mutual Ins. Co.*, 278 Cal.Rptr. 479, 484 (Cal. Ct. App. 1991).

[41]*Id.*

[42]*Friedland v. Travelers' Indem. Co.*, 105 P.3d 639 (Colo. 2005); *Farm Auto Ins. Co. v. Green*, 89 F.3d 97 (Utah 2003).

Applying these principles to Plaintiffs' claims, it is clear that they fail as a matter of law. Each of Plaintiffs' three causes of action stem from Defendant's declination of coverage. Since Defendant could properly deny coverage based upon untimely notice, Plaintiffs may not maintain a cause of action under the policy.

## VI.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Strike is DENIED.

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.

The Clerk of the Court is directed to close this case and enter judgment in favor Defendant St. Paul Mercury Insurance Company and against Plaintiffs on all claims.

DATED   June 6, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge